# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY LEE CALLAHAN, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> Defendant. ) <br> _____ ) | NO. EDCV 17-1247-KS <br><br> MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Anthony Lee Callahan ("Plaintiff") filed a Complaint on June 22, 2017, seeking review of the denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On February 26, 2018, the parties filed a Joint Stipulation. (Dkt. No. 19 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and remanding the matter for further proceedings. (Joint Stip. at 29.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further

proceedings. (*Id.* at 29-31.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 23, 2013, Plaintiff, who was born on August 28, 1985[1], protectively filed an application for SSI. (Administrative Record ("AR") 11, 145-50.) Plaintiff alleged disability commencing on January 31, 2009 due to depression; bipolar disorder; problems with his knees, back, and lungs; attention deficit disorder; generalized anxiety disorder; paranoia; and panic attacks. (AR 63, 76.) After the application was denied initially (AR 62) and on reconsideration (AR 89), Plaintiff requested a hearing (AR 102). On January 26, 2016, at a hearing at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff, Plaintiff's mother, and a vocational expert. (AR 28-61.) On March 8, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 11-23.) On April 27, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date and had the following severe impairments: affective disorder, anxiety disorder, and attention deficit hyperactivity disorder. (AR 13.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of Impairments. (AR 14.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

---

[1] Plaintiff, who was 27 years old on the date he filed his application, was considered a "younger individual age 18-49" under agency guidelines. (20 C.F.R. § 416.963.)

2

Plaintiff was limited to performing simple, routine, repetitive tasks with occasional coworker contact and no public interaction. (AR 15.) Although Plaintiff had no past relevant work (AR 21), the ALJ found, based on the testimony of a vocational expert, that Plaintiff could perform other work in the national economy, specifically, the occupations of hand packager; inspector and hand packager; and addresser (AR 22). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

//
//

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff alleges the following two errors: (1) the ALJ failed to properly consider the medical opinion evidence, specifically, the opinions of Plaintiff's treating psychiatrist and a state agency psychologist; and (2) the ALJ failed to properly consider Plaintiff's subjective symptom testimony. (Joint Stip. at 3.) As discussed below, the Court concludes that the treating physician issue from Issue One warrants reversal of the ALJ's decision.

### I. <u>Medical Opinion Evidence (Issue One)</u>

In Issue One, Plaintiff contends that the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrist and a state agency psychologist. (Joint Stip. at 3-11.)

#### A. **Applicable Law**

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective

to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also* 20 C.F.R. § 416.927(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. § 416.927(c)(2)-(6) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. Ultimately, the ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

The opinion of a non-examining physician generally is entitled to less weight than the opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

**B.  Analysis**

   **1.  Treating psychiatrist's opinion**

Dr. Thomas Jackson began treating Plaintiff in 2013. (AR 289.) Dr. Jackson diagnosed Plaintiff with bipolar and related disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder; he prescribed a variety of antidepressant and

5

antianxiety medications, including Lamictal, Zoloft, Abilify, Buspar, Trazadone, and Prazosin. (AR 294, 296.) In September 2015, Dr. Jackson completed a Mental Residual Functional Capacity Statement. (AR 298-301.) Dr. Jackson stated, among other things, that Plaintiff's prognosis was "poor"; that Plaintiff would be unable to perform most mental tasks for 15 percent or more of a workday; that he would be "off task" for more than 30 percent of a workday; and that he would be absent from work more than 6 days per month. (*Id.*) Dr. Jackson explained that Plaintiff had experienced "mood swings (mania/depression) since age 12"; that with medications, Plaintiff still has approximately 2 episodes per month; that Plaintiff feels anxious and depressed for 60 to 70 percent of his waking hours; and that Plaintiff feels "watched and plotted against." (AR 301.)

Because Dr. Jackson's September 2015 opinion was contradicted by the opinions of an examining physician (AR 253-57) and two non-examining physicians (AR 70-72, 84-86), the ALJ was required to articulate specific and legitimate reasons to reject Dr. Jackson's opinion. The ALJ stated the following four reasons to accord "little weight" to Dr. Jackson's opinion. (AR 19.)

First, the ALJ found that the limitations assessed by Dr. Jackson "appear to be based quite heavily on [Plaintiff's] subjective complaints, and are not supported by the objective evidence." (AR 19.) A physician's opinion that is premised to a large extent upon a claimant's own account of his symptoms and limitations may be disregarded where those complaints have been properly discounted. *See Morgan v. Comm'r of the SSA*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This principle, however, has less application to mental health opinions. "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). Here, this reason was legally insufficient

6

not only because it was directed at a psychiatric evaluation, but also because the record reflects Dr. Jackson did not rely exclusively on Plaintiff's subjective complaints. Dr. Jackson relied to a large extent on observations from numerous clinical interviews and mental status evaluations. (AR 286-93, 296, 301.) Dr. Jackson also explained that his opinion was based on Plaintiff's history and medical file, as well as progress and office notes. (AR 301.) Given this record, Dr. Jackson's opinion could not be discounted as based largely on Plaintiff's subjective complaints. *See Buck*, 869 F.3d at 1049 (rejecting ALJ's reasoning that a psychiatrist's opinion was premised to a large extent on the claimant's subjective complaints where the opinion was based on objective measures such as a clinical interview and a mental status evaluation); *see also Regennitter v. Comm'r of SSA*, 166 F.3d 1294, 1300 (9th Cir.1999) (holding that an examining psychologist did not simply take the claimant's statements "at face value" where he interviewed the claimant twice, confirmed his complaints, conducted objective testing, and explained how the test results supported his diagnoses). Thus, this was not a legally sufficient reason to reject Dr. Jackson's opinion.

Second, the ALJ found that Plaintiff "has not undergone psychological counseling or required hospitalization." (AR 19.) In general, an ALJ may reject a treating physician's opinion when he prescribed a conservative course of treatment. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, however, although the record contains no evidence of counseling sessions or hospitalization, it does contain evidence that Dr. Jackson prescribed several psychiatric medications—Lamictal, Zoloft, Abilify, Buspar, Trazadone, and Prazosin—at "very significant doses," yet Plaintiff still regularly experienced mood swings, i.e., mania and depression. (AR 294, 296.) When a claimant requires several psychiatric medications at significant doses, courts in this circuit have repeatedly rejected an ALJ's characterization of such treatment as conservative. *See Drawn v. Berryhill*, __ F. App'x __, 2018 WL 1417229, at *3 (9th Cir. Mar. 22, 2018) (rejecting characterization of treatment as conservative where the claimant was taking "a number of psychiatric medications"); *Carden v. Colvin*, 2014 WL 839111, at *2 (C.D. Cal. Mar. 4, 2014)

7

(collecting cases finding that treatment was not accurately characterized as conservative where the claimant was taking multiple psychotropic medications); *see also Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) (holding that an ALJ's rejection of a treating psychiatrist's opinion for lack of psychiatric hospitalization was not specific and legitimate because "[a] claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization."). Thus, to the extent that the ALJ rejected the treating psychiatrist's opinion because the absence of counseling sessions and hospitalizations reflected conservative treatment, this was not a specific and legitimate reason to discount the treating psychiatrist's opinion.

Third, the ALJ found that "[a]lthough mental status examination findings suggest [Plaintiff] has some limitations from his severe mental impairments, the record does not support the extreme limitations opined by Dr. Jackson." (AR 19.) The ALJ did not, however, specifically explain how the record failed to support Dr. Jackson's opinion. Without such an explanation, this was not a legally sufficient reason to reject the treating psychiatrist's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (same); *see also Orn*, 495 F.3d at 632 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (citing *Embrey*, 849 F.2d at 421-22); *Regennitter*, 166 F.3d at 1299 ("[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion.").

Fourth, the ALJ found that "Dr. Jackson's conclusion that the claimant is unable to work has no probative value and is rejected." (AR 19.) The ALJ explained that, "[a]s an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance pursuant to 20 C.F.R. 416.927(d) and

8

SSR 96-5p." (*Id.*) Although it is undisputed that a disability determination involves an issue reserved to the Commissioner, this does not mean that a physician is unqualified to give a medical opinion about a claimant's ability to work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability – the claimant's ability to perform work."); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) ("[T]he fact that the treating physician's opinion was on an issue reserved to the Commissioner is not by itself a reason for rejecting that opinion."). An ALJ is not bound by such an opinion, but the ALJ still must provide legally sufficient reasons to reject it. *Reddick*, 157 F.3d at 725. Because Dr. Jackson's opinion about Plaintiff's ability to work was competent evidence on the ultimate issue of disability, the opinion could not be rejected simply because it involved the ultimate issue of Plaintiff's ability to work.

In sum, the ALJ did not provide legally sufficient reasons to accord little weight to the treating psychiatrist's opinion. Thus, this part of Issue One warrants reversal of the ALJ's decision.

### 2. State agency psychologist's opinion

Dr. Jerry Henderson, a state agency psychologist, completed a Mental Residual Functional Capacity Assessment after reviewing Plaintiff's medical file. (AR 70-72.) The assessment included a questionnaire portion in which Dr. Henderson stated that Plaintiff had "moderate" limitations in multiple areas of mental functioning. (AR 71.) In the final narrative section of his assessment, Dr. Henderson concluded as follows:

> [Plaintiff] is able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and

performed by rote, few variables, little judgment; supervision required is simple, direct and concrete. UNSKILLED.

(AR 72.)

The ALJ gave "partial weight" to the opinions of the state agency psychologists, including Dr. Henderson. (AR 19.) And eventually, the ALJ's RFC determination incorporated a limitation to "simple, routine, repetitive tasks with occasional coworker contact and no public interaction." (AR 15.) Plaintiff contends that this RFC determination failed to fully account for Dr. Henderson's opinion, which assessed various moderate limitations that the ALJ did not incorporate. (Joint Stip. at 5.) In particular, the ALJ did not incorporate Dr. Henderson's earlier statements, from the questionnaire portion of the assessment, that Plaintiff would be "moderately limited" in (1) his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* (citing AR 71).)

The ALJ's evaluation of the state agency psychologist's opinion was not legally erroneous. The ALJ's RFC determination that Plaintiff could perform simple, routine, repetitive tasks with limited personal contact was fully consistent with Dr. Henderson's conclusion, in the final narrative section of his assessment, that Plaintiff was capable of work with incidental personal contact and with tasks that are learned and performed by rote. (AR 72.) Although Dr. Henderson's assessment also included an earlier questionnaire portion that posited some other moderate limitations in mental functioning, it is presumed that Dr. Henderson translated those limitations into the conclusion he stated in the final narrative section. Thus, it was the final narrative section that was the relevant medical opinion for purposes of the ALJ's RFC determination. *See Buck*, 869 F.3d at 1050-51 (holding that an

ALJ correctly interpreted a state agency psychologist's assessment by relying on the final narrative section rather than an earlier checklist of symptoms). Because the ALJ's RFC determination properly accounted for Dr. Henderson's ultimate conclusion, this part of Issue One does not warrant reversal of the ALJ's decision.

## II. Plaintiff's Subjective Symptom Testimony (Issue Two)

In Issue Two, Plaintiff contends that the ALJ failed to properly consider his subjective symptom testimony. (Joint Stip. at 18-21.)

### A. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.[2] *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the

---

[2] On March 28, 2016, Social Security Ruling ("SSR") 16–3p superceded SSR 96–7p, which required the ALJ to assess the credibility of a claimant's statements. SSR 16–3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016–17, June 2017. The revision is not applicable to Plaintiff's application here because the ALJ's decision was issued on March 8, 2016. But the Ninth Circuit has acknowledged that SSR16–3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678, n.5 (9th Cir. 2017).

11

claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

**B.  Analysis**

Plaintiff testified as follows about his impairments and ability to function. He cannot work because he has "all sorts of issues" such as paranoia and sleeplessness. (AR 33.) He wakes up every 30 minutes and can "barely function." (AR 34.) He lives with his mother and spends most of the day in his room. (AR 35.) He last drove a car more than 10 years earlier. (AR 36.) If offered a job, he would be unable to focus or to stay at work for eight hours. (AR 37.) He thinks that "everybody's thinking or talking" about him. (*Id.*) On a typical day, he uses his computer to read political news and play games. (AR 51-52.) He feeds his cats but does not do chores such as laundry or cleaning his room. (AR 52.)

12

In addition to testifying at the hearing, Plaintiff completed a Function Report describing his activities and abilities. (AR 201-08.) On a typical day, he wakes up and uses his computer. (AR 201.) He needs to be reminded to perform personal care and to take his medications. (AR 202-03.) He prepares simple meals. (AR 203.) He shops in stores and by computer. (AR 204.) He watches television with his mother and talks with his brother. (AR 205.) He talks with his friend over the phone and internet. (*Id.*)

The ALJ found Plaintiff's allegations of disability to be "less than fully credible" for four reasons. (AR 20-21.) First, the ALJ found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 20.) Specifically, the ALJ found that "the records reveal his treatment has been essentially routine and conservative in nature, consisting of only medication refills every few months" and that the "lack of more aggressive treatment, such as counseling or psychiatric hospitalization, suggests [Plaintiff's] symptoms and limitations were not as severe as he alleged." (*Id.*)

In general, an ALJ may properly discount a claimant's subjective symptom allegations because of the conservative nature of his or her treatment. *See Tommasetti*, 533 F.3d at 1039 (citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment")); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Here again, however, the Court is not convinced that Plaintiff's treatment could properly be characterized as conservative. As noted, Plaintiff was taking several psychiatric medications—Lamictal, Zoloft, Abilify, Buspar, Trazadone, and Prazosin—at "significant doses," yet still experienced regular symptoms. (AR 294, 296.) Given the seriousness of these medications, the characterization of Plaintiff's treatment as conservative was not a clear and convincing reason to reject his subjective symptom testimony. *See Drawn*, 2018

WL 1417229, at *3; *Morales*, 239 F. Supp. 3d at 1218 ("[T]he ALJ invalidly relied on the fact that the record failed to contain evidence that plaintiff's 'mental status was of such severity that he required psychiatric hospitalization or intensive individual therapy with a psychiatrist or psychologist.' That plaintiff had not experienced psychiatric hospitalization is neither a clear and convincing nor specific and legitimate reason to discredit his testimony."); *Carden*, 2014 WL 839111, at *2. Thus, this was not a clear and convincing reason to find Plaintiff less than fully credible.

Second, the ALJ found that the record "reflects significant gaps in [Plaintiff's] history of treatment." (AR 20.) In particular, the ALJ noted that Plaintiff was referred for psychiatric treatment in December 2008, but failed to follow through with the referral and did not seek psychiatric treatment until nearly four years later. (AR 20; *see also* AR 259.) An ALJ may properly discount a claimant's subjective symptom allegations on this basis. *See Molina*, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (citations omitted). Because the record establishes a significant treatment gap, this was a clear and convincing reason on which the ALJ could rely to find Plaintiff less than fully credible.

Although an ALJ may not penalize a claimant who fails to pursue treatment because of his mental illness, *see Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the record does not show Plaintiff was unfairly penalized on this basis. The significant treatment gap identified by the ALJ preceded Plaintiff's regular treatment with Dr. Jackson, and the record does not show this gap was attributable to Plaintiff's mental illness rather than his simple failure to follow through on the December 2008 referral. Thus, the ALJ reasonably relied on the gap to find Plaintiff less than fully credible. *See Molina*, 674 F.3d at 1114 ("[T]here was no medical evidence that [claimant's] resistance was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the

14

ALJ to conclude that the level or frequency of treatment was inconsistent with the level of complaints.") (citation omitted).

Third, the ALJ cited evidence of Plaintiff's activities. (AR 20.) Plaintiff's admitted activities included the following: "performing self-care independently, preparing simple meals, feeding his cats, cleaning up after his cats, shopping in stores and by computer, using the internet, reading news articles, watching television, playing video games, spending time with his mother and brother, and talking to friends on the phone and online." (AR 20; *see also* AR 51-52, 201-05.) The ALJ found that these activities were "somewhat limited" but undermined Plaintiff's complaints on two grounds: the activities were "the same as those necessary for obtaining and maintaining employment," and they were "inconsistent with the presence of an incapacitating or debilitating condition." (AR 20.)

Both of these rationales from Plaintiff's daily activities were clear and convincing grounds to find Plaintiff less than fully credible. The ALJ reasonably concluded that Plaintiff's activities, though limited, were transferable to an employment setting. *See Burch*, 400 F.3d at 681 (ALJ was entitled to infer that a claimant's daily activities involved skills that could be transferred to a workplace when the claimant was "able to care for her own personal needs, cook, clean and shop" and "interact[] with her nephew and her boyfriend"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) ("[Claimant] indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries."). Similarly, the ALJ reasonably concluded that Plaintiff's activities were inconsistent with the presence of an incapacitating or debilitating condition. *See, e.g., Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported

adverse credibility determination); *Orn*, 495 F.3d at 639 (evidence of daily activities may be relied upon where it contradicts the claimant's other testimony).

Fourth, the ALJ found that Plaintiff's work history showed he "worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments." (AR 21.) Further, the ALJ noted evidence that Plaintiff "stopped working for reasons not related to the allegedly disabling impairments": Plaintiff "stopped working in January 2006, three years before the date he alleged disability, because he was laid off." (*Id.*) An ALJ may properly discount a claimant's subjective symptom allegations on these grounds. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that an ALJ could consider a claimant's "spotty" work history as negatively affecting her credibility regarding her inability to work); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that an ALJ properly discounted a claimant's credibility after finding that he stopped working not because of disability, but because he had been laid off); *Aarestad v. Comm'r of SSA*, 450 F. App'x 603, 604 (9th Cir 2011) ("The evidence showed that [claimant] worked only sporadically before the alleged onset of disability (which suggests that her decision not to work was not based on disability)."). The record supports the ALJ's characterization of Plaintiff's work history before his alleged onset date as sporadic (AR 154), and the record also reflects he stopped working in 2006 because he was laid off (AR 167). Thus, this was a clear and convincing reason to find Plaintiff less than fully credible.

In sum, the ALJ articulated three reasons that were clear and convincing in order to find that Plaintiff's subject symptom allegations were less than fully credible. To the extent that the ALJ provided another reason, based on the conservative nature of Plaintiff's treatment, which was legally insufficient, the error was harmless. *See Carmickle*, 533 F.3d at 1162 (holding that two invalid reasons to reject a claimant's testimony were harmless

16

error where the ALJ articulated two other reasons that were valid). Thus, this issue does not warrant reversal of the ALJ's decision.

### III. <u>Remand For Further Administrative Proceedings</u>

"An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 874 F.3d 1130, 1132 (9th Cir. 2017). For the reasons discussed above, reversal is warranted because the evaluation of the treating psychiatrist's opinion was not supported by legally sufficient reasons. This matter, however, is not appropriate for a remand for an award of benefits because further administrative proceedings would serve a useful purpose of resolving outstanding factual issues. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). Accordingly, the Court remands this matter for further administrative proceedings.

### CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

//
//
//
//
//

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 29, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE